UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN POLLEY,<br><br>    Plaintiff,<br><br>v.<br><br>RON DAVIS,<br><br>    Defendant. | Case No. 17-cv-03793-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DAVIS'S MOTION TO DISMISS; GRANTING DEFENDANT DAVIS'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST; DENYING AS MOOT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**<br><br>Re: ECF Nos. 21, 30, 38 |

Plaintiff, an inmate at San Quentin State Prison ("SQSP") filed this *pro se* action alleging that SQSP Warden Davis violated his rights under the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–34. Now pending before the Court are the following motions: Plaintiff's motion for summary judgment; Defendant Davis's motion to dismiss and for summary judgment; and Plaintiff's motion to compel compliance with subpoena. ECF Nos. 21, 30, 38. For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion to dismiss; GRANTS Defendant's motion for summary judgment for failure to exhaust administrative remedies, and DENIES as moot Plaintiff's motions for summary judgment and motion to compel compliance with subpoena.

**I.    Motion to Dismiss**

    **A.    Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss an action based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P.

12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claim alleged. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In evaluating a Rule 12(b)(6) motion, the issue is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims" advanced in his or her complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984). "[A] complaint need not contain detailed factual allegations; rather, it must plead enough facts to state a claim to relief that is plausible on its face." *Cousins*, 568 F.3d at 1067–68 (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp.*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Ashcroft*, 556 U.S. at 678. "[T]o ensure that *pro se* litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements [,]" the pleadings of *pro se* litigants "are liberally construed, particularly where civil rights claims are involved." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In evaluating a Rule 12(b)(6) motion, a court may consider only the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters of which the court may take judicial notice. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without

2

converting the motion to dismiss into a motion for summary judgment."). A court "*may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss," *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in original).

### B. Complaint

Plaintiff makes the following allegations in his complaint.[1]

Plaintiff has an ADA classification as a DNM (disabled but mobile) inmate who requires a lower bunk and is restricted to the ground floor or limited stairs. ECF No. 1-1 at 4–5. Plaintiff's DNM status does not require either special housing or level terrain with the ability to walk up and down stairs. *Id.* On July 23, 2015, Plaintiff signed a CDCR-128B chrono which stated that he is able to access all programs, services, and activities on Facility A, which houses SQSP's general population; that he could walk up and down stairs without difficulty; and that he did not seek further accommodations at that time. *Id.* at 6. As of the date of the complaint, Plaintiff has not requested any further accommodations and is fully accommodated. *Id.*

On February 3, 2017, Plaintiff was informed that all inmates with ground floor restrictions would be transferred out of SQSP. ECF No. 1-1 at 6. He was informed that if he relinquished his ADA status and the related accommodations, he would not be transferred out of SQSP. *Id.* at 6–7. If Plaintiff relinquished the ground floor restriction, he would be subject to being housed in any of the five levels in SQSP Facility A. *Id.* at 7. If Plaintiff were transferred away from SQSP, he would lose his full-time job; he would be unable to attend certain self-help groups which are only available at SQSP and which have been recommended as helpful towards establishing parole eligibility; and his sole family member would be unable to visit him. *Id.* at 7–8.

Plaintiff brings his suit against Defendant Davis, the warden of SQSP, in both Defendant Davis's individual and official capacities. ECF No. 1-1 at 3 and 18.

---

[1] As discussed *supra* in Section I.A., in evaluating the motion to dismiss, the Court may only consider the complaint and documents attached as exhibits to the complaint. *Ritchie*, 342 F.3d 908. Accordingly, in deciding the motion to dismiss, the Court does not consider facts alleged in later-filed pleadings, and the Court accepts as true, for the purposes of the motion to dismiss, the allegations in the complaint, even if they are contradicted by evidence presented in later-filed pleadings or by Plaintiff's own later-filed pleadings.

3

**C. Analysis**

Defendant Davis argues that the complaint fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure for two reasons. First, Defendant Davis argues that there is no allegation that he personally participated in, or had knowledge of or failed to act on, any alleged decision or action regarding Plaintiff and he cannot be held liable in a § 1983 action under a respondeat superior theory. ECF No. 30 at 15. Second, Defendant Davis argues that the proper defendant for an ADA claim is the public entity responsible for the alleged discrimination; that this Court must presume that the suit is brought against Defendant Davis in his individual capacity because Plaintiff did not specify whether he sued Defendant Davis in his official or individual capacity; and a plaintiff cannot assert a § 1983 claim against a defendant in his individual capacity to vindicate rights created by the ADA.

Defendant Davis is correct that § 1983 liability "arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Defendant Davis is also correct that Plaintiff may not bring suit against him in his individual capacity to vindicate rights created by Title II of the ADA, regardless of whether Plaintiff brings the suit pursuant to § 1983 or pursuant to the ADA. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA . . ."); *see also Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) ("Title II provides disabled individuals redress for discrimination by a 'public entity.' *See* 42 U.S.C. § 12132. That term, as it is defined within the statute, does not include individuals. *See* 42 U.S.C. § 12131(1).")

However, Plaintiff has not brought a § 1983 claim against Defendant Davis, and he is not suing Defendant Davis solely in his individual capacity. Rather, Plaintiff has brought an ADA claim against Defendant Davis in both his individual and official capacities, and has specified this in the captions on the pleadings initiating this action. ECF No. 1-1 at 3, and 18. Under *Ex parte Young*, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187 (9th Cir. 2003) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). A state official

4

sued in his official capacity is a "public entity" under Title II of the ADA in an action seeking injunctive relief. *See Miranda B.*, 328 F.3d at 1187–88; *see also Garcia v. S.U.N.Y. Health Servs. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as Garcia is suing the individual defendants in their official capacities [under Title II of the ADA], he is seeking damages from [the state of] New York"). Given that the ADA precludes discrimination by public entities and Plaintiff's claims involve decisions made at the institutional level, the institution's warden is the most appropriate official for purposes of this suit. Defendant Davis is the Warden of SQSP and is therefore the appropriate defendant to be named in his official capacity. *Cf. Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910–11 (9th Cir. 2013) ("Determining whether a modification is reasonable (or even required) is necessarily a fact-specific inquiry, requiring analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards.") (citation and internal quotation marks omitted). Plaintiff has thus stated a cognizable ADA claim against Warden Davis in his official capacity. However, Plaintiff's ADA claim against Warden Davis in his individual capacity must be dismissed. *Vinson*, 288 F.3d at 1156. Accordingly, Defendant Davis's motion to dismiss for failure to state a claim under Rule 12(b)(6) is GRANTED IN PART and DENIED IN PART in that the Court DISMISSES with prejudice Plaintiff's ADA claim against Warden Davis in his individual capacity but DENIES the remainder of the motion to dismiss.

## II. Summary Judgment Motions

Plaintiff has filed a summary judgment motion, arguing that his rights under the ADA were violated when he was required to either subject himself to the possibility of being transferred out of SQSP or give up the accommodations due him under the ADA. ECF No. 21. Defendant Davis has filed an opposition, ECF No. 31, and Plaintiff has filed a reply, ECF No. 35 at 24–25. Defendant Davis has filed a cross-motion for summary judgment, arguing that Plaintiff has failed to exhaust administrative remedies; that the essence of Plaintiff's ADA claim is a dispute over the necessity of certain medical accommodations which fails to state a claim under § 1983; that there is no triable issue of material fact as to whether Plaintiff was discriminated against in violation of the ADA; and that Defendant Davis is entitled to qualified immunity. ECF No. 30. Plaintiff has

5

filed an opposition, ECF No. 35, and Defendant Davis has filed a reply. ECF No. 36. For the reasons set forth below, the Court finds that Plaintiff has failed to exhaust his administrative remedies. Accordingly, the Court will DISMISS this action for failure to exhaust administrative remedies. The Court declines to address the remaining arguments in Defendant Davis's summary judgment motion, and DENIES Plaintiff's summary judgment as moot.

### A. Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v.*

*Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### B. Exhaustion Standard

The Prison Litigation Reform Act ("PLRA") sets forth the following exhaustion requirement: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Because the ADA [is a] . . . federal law[], the plain language of the PLRA requires that prisoners bringing an action under . . . [the ADA that] challeng[es] prison conditions must first exhaust available administrative remedies[]," notwithstanding the absence of a federal administrative exhaustion requirement in the ADA. *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061 (9th Cir. 2007).

The PLRA's exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.*; *see also Booth v. Churner*, 532 U.S. 731, 739–41 & n.5 (2001). Section 1997e(a) requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires the inmate to use all steps of the administrative process and comply with "deadlines and other critical procedural rules." *Id.* at 90. Even when the prisoner seeks relief not available in grievance proceedings, exhaustion is a prerequisite to suit. *Booth*, 532 U.S. at 741. That the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance. *Id.* at 737.

### C. Factual Background

#### 1. *Armstrong* Remedial Plan

The *Armstrong* Remedial Plan is a remedial order issued in *Armstrong v. Davis*, C No. 94–cv-2307–CW, by the District Court for the Northern District of California to enjoin practices that discriminate against disabled inmates in California prisons. *See generally Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001); *Armstrong v. Wilson*, 124 F.3d 1019 (9th Cir. 1997) (affirming order

7

requiring submission of remedial plan for compliance by CDCR with ADA, 42 U.S.C. §§ 12131–34, and Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, in California prisons).

As identified in the *Armstrong* Remedial Plan, the Disability Placement Program ("DPP") is the set of CDCR plans, policies, and procedures to assure nondiscrimination against inmates with disabilities, and to ensure that inmate housing and programming are reasonable and appropriate in a manner consistent with CDCR policy. ECF No. 30-3 ("Cruzen Decl."), ¶ 4 and ECF No. 30-9 at 5–8. The DPP applies to all of the CDCR's institutions and facilities, to all programs that the CDCR provides or operates, and to all inmates who have disabilities that affect a major life activity whether or not the disabilities impact placement. *Id.* The CDCR has designated certain correctional facilities as designated DPP facilities, a policy known as "clustering." Not all CDCR facilities are designated DPP facilities. Designated DPP facilities are able to adequately house inmates whose disabilities affect placement. Inmates with permanent mobility, hearing, vision, and speech impairments severe enough to require special housing and programming are "clustered" in designated DPP facilities. *Id.* Inmates with a permanent impairment of lesser severity that are included within *Armstrong*'s scope, such as a learning or kidney disability, may be assigned to any CDCR facility, whether DPP designated or not, that is consistent with the inmate's case factors. *Id.*

Under the DPP, the following categories of inmates require housing placement in designated DPP facilities:

DPW — full time wheelchair users;

DPO — intermittent wheelchair users;

DPM — inmates that have an orthopedic, neurological or medical condition that substantially limits their ambulation in that they cannot walk 100 yards on a level surface without pausing, that they require housing in a lower bunk, that they cannot be housed in a triple bunk, and that there can be no stairs in their path of travel;

DLT — inmates who require a relatively level terrain/path of travel to ambulate due to mobility or health concerns, and cannot walk up and down a full flight of stairs but can walk up and down at least six steps/stairs;

DPH — hearing impaired inmates;

DPV — vision impaired inmates; and

DPS — speech impaired inmates.

ECF No. 1-1 at 21; ECF No. 30-3 at 8–12.

The DPP also recognizes the following additional categories of inmates with disabilities that do not impact housing placement:

DNM — inmates with a permanent lower extremity mobility impairment who can walk 100 yards and who can walk up a flight of stairs without pausing, with or without aids;

DNH — inmates who have an arm or hand prothesis, or missing digits; inmates who have residual hearing at a functioning level with hearing aids;

DNV — inmates who have vision impairment correctable to central vision acuity better than 20/200 with corrective lenses; and

DNS — inmates who have permanent speech impairment, such as a difficult speech pattern or no speech, and communicate effectively in writing.

ECF No. 1-1 at 21 and ECF No. 30-3 at 12–13.

SQSP has implemented a Local Operation Procedure that incorporates and complies with the *Armstrong* Remedial Plan and the ADA. ECF No. 30-3 at 6–62. SQSP is not a designated DPP institution, except for the Condemned Inmate population, and therefore does not house inmates that medical staff has identified as requiring ground-floor housing or limited-stairs restrictions. Cruzen Decl. ¶ 8 and ECF No. 30-3 at 8. Inmates identified as requiring ground-floor housing or limited-stairs restrictions are placed up for transfer away from SQSP to an institution that can appropriately accommodate their needs. Cruzen Decl. ¶ 8.

### 2. Plaintiff's Accommodations Since 2013

Plaintiff is serving a life sentence and has been housed at SQSP since 2008. ECF No. 30-1 at 20. Since at least 2011, Plaintiff has been designated DNM. ECF No. 30-1 at 43.

On May 20, 2013, SQSP staff approved a CDCR Form 7410, also referred to as a Comprehensive Accommodation Chrono ("chrono"), which authorized the following temporary accommodations for Plaintiff for a six-month period: bottom bunk and low-tier housing. ECF

9

No. 30-1 at 103. On September 17, 2013, another chrono was approved which removed the housing accommodations and approved certain medical equipment for Plaintiff. ECF No. 30-1 at 104. On October 28, 2013, another chrono was approved, which reauthorized the housing accommodations (bottom bunk and low-tier housing) and approved certain medical equipment, both for a one-year period. ECF No. 30-1 at 105. On December 9, 2014, another chrono was approved which again authorized the same housing accommodations (bottom bunk and low-tier housing), this time for a five-month period; and approved certain medical equipment for a one-year period. ECF No. 30-1 at 106. On March 13, 2015, Dr. Reyes approved another chrono, which authorized the same housing accommodations (bottom bunk and low-tier housing) on a permanent basis. ECF No. 30-1 at 107. On June 15, 2015, SQSP doctor Devers approved another chrono, which reauthorized the same housing accommodations (bottom bunk and low-tier housing), but on a temporary basis; and indicated that Plaintiff required an inmate attendant/assistance and transport vehicle lift. ECF No. 30-1 at 109.

On July 15, 2015, Dr. Devers approved a CDCR Form 1845, Disability Placement Program Verification to document Plaintiff's physical limitations for a verified disability, and classified him as DNM. ECF No. 30-1 at 108. On the Form 1845, Dr. Devers noted that Plaintiff had a temporary mobility restriction due to recent surgery. ECF No. 30-1 at 108.

On July 16, 2015, Plaintiff submitted a CDCR Form 1824, Reasonable Modification or Accommodation Request, stated that he was "temporarily disabled due to recent arthoscopic knee surgery and placed on ground floor-limited stairs temporarily." ECF No. 30-3 at 68. Plaintiff requested that the temporary housing accommodations (ground floor, limited stairs, and lower bunk) that had been granted him due to the recent surgery not trigger a transfer away from SQSP. ECF No. 30-3 at 68 (requesting to "remain at CSP-San Quentin with the temporary housing restriction until such time as the temporary housing restriction is removed or modified"). ECF No. 30-3 at 68. On July 23, 2015, the SQSP Institutional Reasonable Accommodation Panel ("RAP") acknowledged that Plaintiff was designated DNM; agreed to accommodate his request that he not be transferred away from SQSP based on his temporary housing accommodations (ground floor, limited stairs, and lower bunk); and accepted Plaintiff's waiver of his right to a medical transfer.

ECF No. 30-3 at 65–69. That same day, Plaintiff signed a CDCR 128B chrono waiving his right for medical transfer, stating that he is able to access all programs, services and activities on Facility A; he is able to walk up and down stairs without difficulty; and he waives any further accommodations at the time. ECF No. 1-1 at 22 and ECF No. 30-3 at 65.

On December 2, 2015, SQSP doctor Reyes approved a CDCR Form 7410 chrono which authorized the same housing accommodations (ground floor, limited stairs, and bottom bunk) on a permanent basis. ECF No. 1-1 at 23.

In or about February 2017, Plaintiff was housed at 1 West 20 Low, which meant that he was housed on the first tier of SQSP West Block, housing cell number 20, lower bunk. At that time, Plaintiff had a security designation of General Population, Medium (A), Level 2 inmate, which is the lowest security level for inmates serving life sentences. ECF No. 30-1 at 21 and 39. As of February 20, 2018, Plaintiff's housing placement and security designation remain unchanged. ECF No. 30-1 at 39.

On February 3, 2017, Dr. Reyes met with Plaintiff pursuant to an email from her supervisor indicating that Plaintiff's case had been flagged by *Armstrong* review and that there were concerns that his disabilities were being underaccommodated. ECF No. 30-1 at 111. Dr. Reyes explained to Plaintiff that, per *Armstrong* policy, inmates with ground floor tier and low bunk housing accommodations may be considered underaccommodated, regardless of their ADA classification. Dr. Reyes further explained that if an inmate truly requires ground floor housing, the inmate should be classified as DLT. ECF No. 30-1 at 111–12. Dr. Reyes informed Plaintiff that if he wished to keep his ground floor tier accommodation, he would need to be classified as DLT (mobility impaired level terrain), which would result in a transfer away from SQSP. ECF No. 30-1 at 111. Dr. Reyes informed Plaintiff that if he wished to retain his DNM status, he would need to relinquish his ground floor tier accommodation, in which case he could potentially be housed up to the fifth tier. Plaintiff stated that he could not be safely housed on the fifth tier.[2]

---

[2] At his deposition, Plaintiff stated that he would be comfortable being housed as high as the second floor of San Quentin, but noted that the ADA accommodations had only two options: ground floor or no ground floor. ECF No. 30-1 at 54–57.

11

ECF No. 30-1 at 111. Dr. Reyes scheduled Plaintiff for a follow-up appointment to allow him time to consider whether to relinquish the ground floor tier housing accommodation. ECF No. 30-1 at 112. On February 9, 2017, Plaintiff met with Dr. Reyes and agreed to have the ground floor tier housing accommodation rescinded. ECF No. 30-1 at 112. Dr. Reyes updated Plaintiff's chrono to reflect a bottom bunk accommodation, but no ground floor or limited stairs restriction. ECF No. 30-1 at 114. On February 14, 2017, Dr. Reyes submitted a Form 1845 confirming Plaintiff as DNM status. ECF No. 30-1 at 115.

### 3. CDCR Grievances Procedures

The CDCR provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 Cal. Code Regs. § 3084.1(a). The CDCR has two administrative grievance processes available to inmates: one for healthcare issues and another for non-healthcare issues.[3] ECF No. 30-5 ("Gates Decl.") ¶¶ 1–2; 15 Cal. Code Regs. §§ 3084.1, 3999.226. Depending upon the subject of the appeal, the inmate must utilize either a CDCR Form 602 (for non-healthcare grievances) or CDCR Form 602–HC (for healthcare grievances). 15 Cal. Code Regs. §§ 3084.2, 3999.227.

In order to exhaust available administrative remedies for non-healthcare grievances, an inmate must submit his complaint on CDCR Form 602 and proceed through several levels of appeal: (1) first formal-level appeal filed with one of the institution's appeal coordinators, (2) second formal-level appeal filed with the institution head or designee, and (3) third formal-level appeal filed with the CDCR director or designee. 15 Cal. Code Regs. §§ 3084.2, 3084.7. This satisfies the administrative remedies exhaustion requirement under § 1997e(a). *Id.* §§ 3084.1(b); 3084.7(d)(3).

In order to exhaust available administrative remedies for healthcare grievances, an inmate

---

[3] This separate healthcare appeal process is a direct result of the appointment of the Federal Receiver over CDCR's prison healthcare system whereby the Health Care Correspondence and Appeals Branch ("HCCAB") is responsible for reviewing and deciding all healthcare grievances at the final level of review. Gates Decl. ¶ 3.

must submit his complaint on CDCR Form 602-HC and also proceed through multiple levels of review. First and second level healthcare appeals/grievances are processed by staff at the inmate's institution, while third level healthcare appeals/grievances are processed by HCCAB staff located at the California Correctional Health Care Services headquarters. Gates Decl. ¶¶ 2–3. The headquarters level review constitutes the final disposition on a healthcare grievance and exhausts administrative remedies. 15 Cal. Code Regs. § 3999.230(h).

For inmates seeking a disability-related accommodation or challenging disability-based discrimination, the CDCR has established a process that allows inmates to (1) request a reasonable accommodation that, if approved, would enable the inmate to access or participate in a program, service, or activity; and (2) challenge disability-based discrimination. 15 Cal. Code Regs. § 3085; Cruzen Decl. ¶ 9. To initiate the process, an inmate must submit a CDCR Form 1824 Reasonable Accommodation Request. Cruzen Decl. ¶ 9. Within five working days of receipt of the Form 1824, the RAP will convene to review and decide the request. Cruzen Decl. ¶ 10. If a determination is still pending and a lack of disability-related access could cause the inmate serious harm or injury, the RAP may approve an interim accommodation. Cruzen Decl. ¶ 10. A non-emergency Form 1824 is typically completed and returned to the inmate within 30 calendar days. Cruzen Decl. ¶ 10. If an inmate is dissatisfied with the Form 1824 decision, the RAP will advise the inmate to file an inmate grievance pursuant to section 3084.1 of the California Code of Regulations, title 15. Cruzen Decl. ¶ 11.

### 4. Plaintiff's Grievance History

As of February 27, 2017,[4] when Plaintiff filed the instant action in Marin County Superior Court, Plaintiff had not filed any grievance, whether a healthcare grievance or a non-healthcare grievance, grieving Dr. Reyes' statements and actions during his February 3 and 9, 2017

---

[4] Pursuant to the prisoner mailbox rule, because Plaintiff is a prisoner proceeding *pro se*, Plaintiff's complaint is deemed filed the date he submitted it for mailing. *See Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003) (holding that a federal or state habeas petition is deemed filed on date the prisoner submits it to prison authorities for filing, rather than on date it is received by court). Plaintiff executed the proof of service on February 27, 2017, ECF No. 1-1 at 2, so the Court presumes Plaintiff submitted the proof of service and pleadings to prison authorities on that same day.

13

interactions with her. Gates Decl. ¶¶ 9–10 and Ex. A; and ECF No. 30-7 ("Voong Decl.") ¶¶ 5–6 and Ex. A. Prior to February 27, 2017, Plaintiff submitted and exhausted at least twenty-one non-healthcare grievances and five healthcare grievances. Gates Decl., Ex. A; and Voong Decl., Ex. A. Nor did Plaintiff file a Form 1824 between February 3, 2017 (when he met with Dr. Reyes) and February 27, 2017.

**D.    Analysis**

**1)    Plaintiff's Claim**

Whether Plaintiff has exhausted his administrative remedies turns on whether, as Defendant Davis alleges, Plaintiff has raised a § 1983 claim regarding Dr. Reyes' treatment on February 3 and 9, 2017; or, as Plaintiff alleges, Plaintiff has raised an ADA claim enforcing the accommodation received in the July 2015 RAP decision. Plaintiff alleges that he has brought a claim pursuant to the ADA section which prohibits retaliation against an individual for exercising his rights under the ADA (42 U.S.C. §  12203(b)). He alleges that when Dr. Reyes required Plaintiff to choose between his ground-floor-limited-stairs-bottom-bunk accommodation and remaining at SQSP, Dr. Reyes retaliated against him for exercising the accommodation granted him in the July 2015 RAP decision — the right to stay at SQSP.

Although Plaintiff's opposition focuses primarily on the July 2015 RAP grant of his request to not be transferred away from SQSP, both his complaint and his summary judgment focus on Dr. Reyes' actions on February 3 and 9, 2017 when she required Plaintiff to either relinquish his ground floor housing accommodation, or be reclassified as DLT rather than DNM. *See* ECF No. 1-1 at 6–7 and 9 (describing Defendants' wrongful conduct as being given a choice between "relinquish[ing] the approved reasonable accommodation or accept the change in status to requiring Level Terrain and be transferred" and alleging that the potential adverse actions stemming from the wrongful conduct violate 42 U.S.C. § 12203(b)); ECF No. 21 at 5 ("On 9 February 2017, the Defendant's in violation of in 42 U.S.C. § 12203(b) Plaintiff was, *coerced, intimidated, threatened* under total duress and completely against Plaintiff's will, into relinquishing the Ground Floor portion and the Limited Stairs portion, of the previously agreed upon Reasonable Accommodation by the threat of transfer.") (emphasis in original). The alleged

14

ADA violation was the February 2017 determination that Plaintiff could not maintain his ground floor accommodations and his DNM status. Moreover, as discussed *infra*, Dr. Reyes' actions on February 3 and 9, 2017, were consistent with the July 2015 RAP because the July 2015 RAP decision authorized an accommodation (no medical transfer away from SQSP) in response to *temporary* housing accommodations (ground-floor-lower-bunk-limited stairs) while Dr. Reyes' meeting with Plaintiff was regarding Plaintiff's *permanent* housing accommodations.

Accordingly, Plaintiff's claim is neither a § 1983 claim; nor does it solely concern the July 2015 RAP decision. Rather, Plaintiff's claim is that prison officials violated the ADA in requiring him to choose between retaining his ground floor accommodation and his DNM status.

### 2) Exhaustion of Administrative Remedies

Defendant Davis argues that Plaintiff has failed to exhaust his administrative remedies with respect to his claim because he did not submit any inmate grievance contesting the medical decisions made by Dr. Reyes pursuant to the February 3 and 9, 2017 appointments prior to this action being filed. ECF No. 30 at 16. Plaintiff argues that he is not required to exhaust an ADA claim; that he exhausted this claim as required by the *Armstrong* Remedial Plan when he filed a Form 1824 in July 2015; and that administrative remedies are effectively unavailable to him.

The Court addresses each argument in turn.

First, Plaintiff argues that he is not required to exhaust administrative remedies because he has brought an ADA claim, and not a § 1983 claim. As discussed *supra*, the PLRA's exhaustion requirement applies to actions brought pursuant to the ADA. *O'Guinn*, 502 F.3d at 1061. Plaintiff's claim is that his rights under the ADA were violated when Defendant Davis subjected him to certain prison conditions. ECF No. 35 at 2. Accordingly, this action is subject to the PLRA's exhaustion requirement.

Second, Plaintiff argues that because he has brought an ADA claim, he must exhaust pursuant to the procedure set forth in the *Armstrong* Remedial Plan (Form 1824), and that he exhausted the instant claim in July 2015 when he successfully filed a Form 1824 that resulted in an assurance that he would not be transferred away from SQSP. Plaintiff argues he is only seeking enforcement of the RAP's July 2015 decision.

The CDCR allows prisoners seeking accommodation under the ADA to submit a Form 1824 to seek releif. 15 Cal. Code Regs. § 3085; Cruzen Decl. ¶¶ 9–11. The Form 1824 process set forth in the *Armstrong* Remedial Plan suffices to exhaust an inmate's administrative remedies. *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005) (holding that the Form 1824 process is "administrative process" provided by state of California and exhausts remedies under the PLRA).

However, the July 2015 RAP decision did not exhaust Plaintiff's administrative remedies with respect to the claim raised in this action. The July 2015 RAP decision was a response to Plaintiff's *temporary* housing restrictions/accommodations. In his July 16, 2015 Form 1824 Reasonable Accommodation Request, Plaintiff stated that he was "temporarily disabled due to recent arthoscopic knee surgery and placed on ground floor-limited stairs temporarily." ECF No. 30-3 at 68. In this Form 1824, Plaintiff requested that he "remain at CSP-San Quentin with the temporary housing restriction until such time as the temporary housing restriction is removed or modified." ECF No. 30-3 at 68. The RAP granted Plaintiff's request on July 23, 2015, on the grounds that despite the temporary housing restriction, Plaintiff was able to walk up and down stairs without difficulty. ECF No. 30-3 at 64. Plaintiff's Form 1824 submitted on July 16, 2015, sought and received relief with respect to his *temporary* housing restrictions/accommodation.

However, on December 2, 2015, the housing restrictions/accommodations — ground floor, limited stairs, and bottom bunk — were made permanent, and remain permanent. ECF No. 1-1 at 23. It is these permanent housing restrictions/accommodations — ground floor, limited stairs, and bottom bunk — that appear to have triggered the *Armstrong* review. The DNM designation is reserved for inmates whose disabilities do not impact their housing placement, and now Plaintiff has housing restrictions which impact his housing placement.

Plaintiff has not requested relief with respect to his permanent housing restrictions/accommodations that went into effect on December 2, 2015. These permanent housing restrictions/accommodations appear to have triggered the *Armstrong* review and required Plaintiff to, in February 2017, choose between his ground floor housing accommodation and his DNM status. Plaintiff's 2015 Form 1824 could not, and did not, exhaust his administrative remedies for his claim regarding prison personnel's actions in 2017.

16

Third, Plaintiff argues that administrative remedies are effectively unavailable to him with respect to his ADA claim for two reasons. He argues that any grievance would have been rejected either for being duplicative, since he had already received the relief requested in the July 2015 RAP decision, or as improperly seeking relief for future potential action. Plaintiff is correct that prison regulations allow a grievance to be rejected on the grounds that it grieves an "anticipated action," 15 Cal. Code Regs. § 3084.6(b)(1), and allow the cancellation of a grievance on the grounds that it duplicates a " previous appeal upon which a decision has been rendered or is pending," *id.* at § 3084.6(c)(2). However, the Court disagrees that Plaintiff could have only grieved an anticipated action (the potential transfer away from SQSP or potential housing reassignment to higher floors). Plaintiff had the option of grieving the removal of his ground floor and limited stairs restriction pursuant to his conversation with Dr. Reyes in February 2017. Plaintiff could also have grieved Dr. Reyes' actions in requiring him to choose between his ground floor housing accommodation and his DNM status. Similarly, the Court disagrees that a grievance regarding the ADA claim in this action would have duplicated prior appeals. As discussed *supra*, the July 2015 RAP decision allowed Plaintiff to stay at SQSP despite temporary housing restrictions. Plaintiff is now seeking relief with respect to his permanent housing restrictions, and he could have grieved this separate issue. Plaintiff has not demonstrated that administrative remedies were unavailable.

Moreover, as discussed *supra*, even when a prisoner seeks relief not available in grievance proceedings, exhaustion is a prerequisite to suit. *Booth*, 532 U.S. at 741. Even if the administrative procedure cannot result in the particular form of relief requested, exhaustion is still required because some sort of relief or responsive action may result from the grievance. *See Booth*, 532 U.S. at 739–41 (PLRA requires administrative exhaustion even where grievance process does not permit award of money damages and prisoner seeks only money damages, as long as grievance tribunal has authority to take some responsive action); *see also Porter*, 534 U.S. at 524–25 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).

The Court finds that Plaintiff has failed to exhaust his administrative remedies with respect to this action. The PLRA's exhaustion requirement applies to Plaintiff's ADA claim in the instant

action. Plaintiff does not dispute that he has not filed any grievance, whether a Form 1824, a Form HC-602, or a Form 602, regarding Dr. Reyes' actions on February 3 and 9, 2017, requiring him to choose between his ground-floor-lower-bunk-limited-stairs housing accommodation and his DNM status. Plaintiff's July 2015 Form 1824 form did not exhaust his administrative remedies for the claim raised in the instant action, and he has not demonstrated that administrative remedies were unavailable to him. The Court GRANTS Defendant Davis's motion for summary for failure to exhaust administrative remedies and DISMISSES this action without prejudice to re-filing upon exhaustion of administrative remedies. Because the Court has dismissed this action for failure to exhaust administrative remedies, the Court will not address Defendant Davis's remaining arguments in favor of summary judgment.

**III.     Motion to Compel Compliance with Subpoena**

Plaintiff has filed a motion to compel Defendant Davis's compliance with a subpoena that he served on Defendant Davis in February 2017. Because the Court has dismissed this action for failure to exhaust administrative remedies, the Court will DENY this motion as moot.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant Davis's motion to dismiss in that the Court DISMISSES with prejudice Plaintiff's ADA claim against Warden Davis in his individual capacity but DENIES the remainder of the motion to dismiss; GRANTS Defendant Davis's motion for summary judgment for failure to exhaust administrative remedies; DENIES as moot Plaintiff's motion for summary judgment; and DENIES as moot Plaintiff's motion to compel compliance with subpoena.

This order terminates ECF Nos. 21, 30, 38.

**IT IS SO ORDERED.**

Dated: September 10, 2018

_____
JON S. TIGAR
United States District Judge

18